GEORGE W. COOMBS *vs.* JAMES S. ABORN *et al.*

FEBRUARY 12, 1908.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Bona Fide Purchaser.*

Where a second purchaser for value, and without notice, purchases from a first purchaser, who is charged with notice, he thereby becomes a *bona fide* purchaser and is entitled to protection.

(2). *Quit-Claim Deed.*

No implication of a defect in title can be drawn from the use of a quit claim deed so as to make the grantees in the chain of title thereunder purchasers with notice.

(3) *Conveyance by Insolvent for Valuable Consideration.*

The fact that a grantor is insolvent at the time he executes a conveyance, for a valuable consideration, is not of itself a ground for setting aside the conveyance. Such a conveyance is not fraudulent, unless there is a fraudulent intent which is common to both seller and purchaser.

BILL IN EQUITY in aid of levy of execution. Bill dismissed.

DOUGLAS, C. J. By the will of Mary B. Padelford, who died August 21, 1899, one undivided sixth part of the Barton Block, in Providence, besides other personal estate, was given to James S. Aborn.

The will was filed in the Probate Court August 29, 1899.

James S. Aborn conveyed all his right, title, and interest

to said Barton Block to Walter A. Peck by deed of bargain and sale with covenants of warranty, August 28, 1899, expressed to be for the consideration of twenty-seven thousand dollars, which deed was duly recorded August 28, 1899. Walter A. Peck conveyed the same undivided sixth part of said estate to Benjamin Aborn, William H. Aborn, Edward Aborn, and Albert C. Aborn by warranty deed dated March 28, 1901, wherein his wife also joined and conveyed to the same parties one undivided ninth part of said estate which had come to her under the will of Mary B. Padelford. This deed was duly recorded April 3, 1901.

Benjamin Aborn, William H. Aborn, Edward Aborn, and Albert C. Aborn, having acquired title to the remaining part of said estate, conveyed the whole estate by way of mortgage to The New England Mutual Life Insurance Company to secure the payment of a loan of seventy-five thousand dollars, by mortgage deed dated March 28, 1901, and recorded the same day.

The complainant brought an action of debt against James S. Aborn in the Common Pleas Division of the Supreme Court on the sixth day of June, 1905, commenced by writ of attachment, by which he attached all the right, title, and interest of the defendant in the Barton Block estate aforesaid, and recovered judgment thereon by default in the Superior Court (whither the case had been transferred by statute), November 8, 1906, for the sum, including costs, of $23,668.34, and on November 16, 1906, took out execution therefor and caused the same to be levied upon the real estate attached.

This bill is brought in aid of the levy of execution to avoid the aforesaid deeds of James S. Aborn to Walter A. Peck and from Walter A. Peck to Benjamin Aborn, William H. Aborn, Edward Aborn, and Albert C. Aborn, and to exempt the interest attached from the lien of the mortgage in so far as it may be first satisfied from the remaining five-sixths of the estate.

The bill sets out that the action at law was brought upon a contract between the plaintiff and the said James S. Aborn, executed February 24, 1899, upon which the sum of $17,437.60

became due to the plaintiff February 24, 1900; and further avers that both the deeds aforesaid were executed without consideration and with the intent and purpose to hinder, delay, and defraud the creditors of said James S. Aborn, and that the said Benjamin Aborn, William H. Aborn, Edward Aborn, and Albert C. Aborn had notice that the deed from James S. Aborn to Walter A. Peck, as well as the deed to themselves from said Peck, was without consideration, and made with the fraudulent intent aforesaid.

James S. Aborn was served by publication, and, not appearing, the bill was taken against him *pro confesso.*

Walter A. Peck has died, and his heirs were not made parties.

Benjamin Aborn, William H. Aborn, Edward Aborn, and Albert C. Aborn have appeared and answered, denying the alleged fraud and claiming to be *bona fide* purchasers for value without notice. The New England Mutual Life Insurance Company has also answered.

A large part of the evidence submitted by the complainant is offered to substantiate the debt on which his action at law is founded, but we deem it unnecessary to discuss the validity of the judgment or to decide upon the voidability of the deed to Walter A. Peck, as the evidence seems to us to fully substantiate the claim of the answering defendants that they were *bona fide* purchasers without regard to the character of the transaction between James S. Aborn and Walter A. Peck.

(1)     Says Mr. Pomeroy (Eq. § 754): "There are two special rules on the subject which have been settled since an early day. . . . The first is that if a second purchaser for value and without notice purchases from a first purchaser who is charged with notice he thereby becomes a *bona fide* purchaser and is entitled to protection," citing numerous cases.

The facts adduced upon which we are asked to impute notice of the invalidity of Walter A. Peck's title to the answering defendants are as follows: At the time of the contraction of the debt to the complainant, James S. Aborn was carrying on the business of a stock broker, in Worcester, Mass. Before the debt became due he failed in business there and removed to New Jersey and about November, 1903, went to Europe,

where he has since remained. While in New Jersey he visited the house of one of the defendants for a short time.

No definite statement of the assets and liabilities of James S. Aborn is given, but the fact seems to be substantially established that at the time of his leaving Worcester he was insolvent.

James S. Aborn married the sister of Walter A. Peck and is a cousin of Walter A. Peck's wife and also a cousin of Benjamin Aborn, William H. Aborn, Edward Aborn, and Albert C. Aborn, who are brothers to each other and cousins of Mrs. Peck.

The attack upon the validity of the first deed is sought to be supported by the relationship of the parties, the character of the deed and the time of its execution, and the absence of proof, other than the recital in the deed itself, that a valuable consideration was paid.

(2) The relationship of the parties at the most suggests to the court a careful scrutiny of the evidence, if any, bearing upon the question of good faith. No implication of a defect in title can be drawn from the use of a quit-claim deed so as to make the grantees in the chain of title thereunder purchasers with notice. *Babcock* v. *Wells*, 25 R. I. 23. It is in evidence that, by the will of Mrs. Padelford, James S. Aborn received, in addition to this real estate, a considerable amount of personal property. He was not a resident of Rhode Island, had no business interests here, and may have had many reasons for disposing of this fractional interest in the real estate besides the desire to hinder, delay, or defraud his creditors. Indeed, it does not appear what his pecuniary condition was at the time of Mrs. Padelford's death, or that any of his creditors were then pursuing him. There are no circumstances shown which tend to discredit the *prima facie* evidence of the deed itself that an adequate price was paid. The fact that the

(3) grantor is insolvent at the time he executes the conveyance (for a valuable consideration) is not of itself a ground for setting aside the conveyance. Such a conveyance is not fraudulent unless there is a fraudulent intent which is common to both seller and purchaser. 20 Cyc. 455, B.

The entire absence of any evidence relating to the circumstances of the execution of the deed to Peck leaves the question of the validity of it, at the most, uncertain. The facts adduced can in our opinion give rise only to conjecture and suspicion, and form no adequate basis for a judgment of fraud. Upon the principles declared in *Nightingale* v. *Lippitt*, 6 R. I. 321, 329; *Dolan* v. *Hughes*, 20 R. I. 513, 515; *Foster* v. *Hall*, 12 Pick. 92, much more certain proof of fraud is necessary. But we prefer to base our decision upon the validity of the second deed.

The defendants Benjamin Aborn, William H. Aborn, Edward Aborn, and Albert C. Aborn state with apparent frankness their reasons for taking the deed from Peck. They testify that when James S. Aborn came to New Jersey, beyond the general rumor of his failure, they had no knowledge of his business affairs; they had no business connection with him which would prompt inquiry, and on account of his state of health avoided the subject. He had not then inherited the interest in question. Afterwards they had no knowledge of the circumstances of the transaction between him and Walter A. Peck, when it occurred or at any time, beyond what was conveyed by the public record which they caused to be examined by counsel before they bought. Further, that owning, as they did, a large fractional part of the Barton Block estate, after the conditions incident to a tenancy in common with the other heirs had developed differences of opinion as to the management of the property, they fixed upon a price at which they would buy; and when it was accepted by Walter A. Peck and the other heirs, paid a fair sum for the outstanding interests, giving to Peck his proportionate share, and borrowed part of the purchase money upon mortgage from the defendant insurance company. If this statement is true, and it is uncontradicted and credible, we see nothing in their conduct which invalidates their title or that of their mortgagee. The material allegations in the bill, that they paid no consideration for the deed from Peck, and that they had notice that the deed from James S. Aborn to Peck was made without consideration,

and with the intent to hinder, delay, and defraud creditors, are amply disproved.

As the complainant has failed to show any defect in the title of the defendants, the bill must be dismissed.

Case remanded to the Superior Court, with direction to enter a final decree dismissing the bill with costs.

*William B. Greenough and Livingston Ham,* for complainant.

*Tillinghast & Tillinghast,* for certain respondents Aborn.

*Edward D. Bassett,* for respondent New England Mutual Life Insurance Company.