DECISION
This case is before the Court for decision following a trial before a Judge, sitting without a jury. Plaintiff, Ciba Specialty Chemicals Corporation (Ciba) seeks to quiet title to certain real property located in the City of Warwick against claims of Defendant, WP Properties, L.L.C. (WP). Evidence was presented on July 24, 2001 and July 25, 2001. The parties have submitted post-trial memoranda in support of their respective positions.
In an action tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon. Super. R. Civ. P. 52(a). To comply with this rule, the trial justice need not engage in extensive analysis and discussion, but must address and resolve the pertinent, controlling factual and legal issues. J.W.A. Realty, Inc. v. City of Cranston, 121 R.I. 374, 399 A.2d 479 (1979).
 FINDINGS OF FACT
The material facts are mainly undisputed, and the parties stipulated to most of them. Both Plaintiff and Defendant own parcels of real estate located in the City of Warwick within Assessor's Plat 290. Plaintiff owns several contiguous assessor's lots (Ciba Parcel). Defendant owns a residential house which is situated on four assessor's lots, 220, 222, 242 and 243 (Alarie Parcel). Plaintiff obtained its property from Ciba-Geigy Corporation (Ciba-Geigy) in December, 1996, pursuant to a Bargain and Sale Deed. Defendant obtained its property from Richard and Helen Alarie (Alarie) in November, 1997. Alarie had purchased the property from Ciba-Geigy in January, 1993.
As of June 12, 1967, Ciba-Geigy owned both the property of the Plaintiff and the property of the Defendant. On that date, the City of Warwick, by resolution of its City Council, abandoned its right, title and interest in Larch Avenue, a street then completely surrounded by Ciba-Geigy's land, including the land presently owned by Plaintiff and a portion of the land presently owned by Defendant.
By operation of law, upon abandonment of Larch Avenue by the City of Warwick, the owner or owners of neighboring property acquired ownership of the strip of Larch Avenue abutting their property line up to the middle of the road. Davis v. Girard, 74 R.I. 125, 131 (1948). Since Ciba-Geigy then owned all of the property abutting Larch Avenue, by operation of law, Ciba-Geigy acquired title to the entire street.
Ciba-Geigy retained attorney, Ronald Markoff, to represent its interests as seller in connection with the transfer of lots 220, 222, 242 and 243 to Alarie. Alarie was also represented by counsel. Markoff testified at trial, and Richard Alarie testified by deposition. The Court finds that Ciba-Geigy intended to sell only the residential house and four lots to Alarie, who had been occupying the property as a tenant. The Court further finds that Alarie intended only to purchase the house and four lots from Ciba-Geigy.
Based upon the information supplied to Markoff from the title examiner he engaged to assist him with the transaction, Markoff learned that lot 220 abutted the abandoned street, Larch Avenue. He also learned that Ciba-Geigy had owned lot 220 since 1966, prior to the date when the street was abandoned by the City of Warwick. Markoff realized that Ciba-Geigy, as owner of lot 220 also owned the portion of Larch Avenue which abutted that lot up to the midline of the street. He intended to incorporate that extra strip of land into the deed from Ciba-Geigy to Alarie. His choice of words on that deed created the problem that led to the instant litigation.
The deed prepared by Markoff includes the following language: "[t]ogether with all right, title and interest in and to Larch Avenue duly abandoned June 12, 1967 by Resolution of the Warwick City Council."
The Court finds that Ciba-Geigy only intended to convey to Alarie the portion of Larch Avenue that abutted lot 220. The Court finds that Alarie never even knew of the existence of Larch Avenue and clearly never thought that he had purchased any property other than the house and four lots, 220, 222, 242 and 243. The deed was recorded.
In December 1996, Plaintiff obtained Ciba-Geigy's interest in all other lots owned by it within Assessor's Plat 290.
Attorney Andrew Sholes testified on behalf of Defendant. In 1997, Sholes, acting on behalf of WP performed legal work in connection with WP's interest in purchasing the Alarie property. Sholes conducted a title examination and reviewed the aforementioned language on the recorded deed prepared by Markoff: "[t]ogether with all right, title and interest in and to Larch Avenue duly abandoned June 12, 1967 by Resolution of the Warwick City Council."
The Court draws the inference that Sholes, who was familiar with the area and who had extensive real estate experience knew or at least suspected that at one time, Ciba-Geigy probably owned more than the four lots transferred to Alarie. He reviewed the real estate records and learned that on the date of the transfer to Alarie, Ciba-Geigy owned all property abutting Larch Avenue. Sholes concluded that the recorded deed from Ciba-Geigy to Alarie transferred not only the four lots and a small portion of the abandoned street, but transferred to Alarie whatever title and interest Ciba-Geigy then had in Larch Avenue. It was based on that belief that WP purchased the Alarie property on November 14, 1997.
 FINDINGS OF LAW
When construing a deed, the Court is bound to give the language in the deed such an interpretation as will carry out the grantor's intent. Reniere v. Gerlach, 752 A.2d 480, 483 (R.I. 2000). The grantor's intent must be ascertained from the deed itself, Gaddes v. Pawtucket Institution for Savings, 33 R.I. 177, 186, 80 A. 415 (1911), and the deed must be construed according to its plain meaning. Kusiak v. Ucci, 53 R.I. 36, 38 (1932).
The plain meaning of the subject deed reveals that Ciba-Geigy transferred to Alarie all of its right, title and interest in Larch Avenue, instead of merely its interest in that limited portion of Larch Avenue that abuts lot 220. However, the Court also finds that such transfer was the result of mutual mistake.
If an instrument fails to express the agreement or intention of the parties because of mutual mistake, then reformation is authorized. Id., 76 C.J.S. Reformation of Instruments § 30. In order to reform a deed, the moving party must show by clear and convincing evidence "that the parties had come to a prior complete understanding respecting the essential terms of the agreement between them, but also that because of their mutual mistake the instrument failed correctly to express that agreement in some material respect." (emphasis in original), Id., Dimond v. Barlow, 82 R.I. 399, 406 (1955). A mutual mistake is one that is common to both parties and relates to the same terms of the deed. Vanderford, 64 A.2d at 488. For a mutual mistake to occur, the deed as drafted must fail to convey the intent or meaning of either party. Id.
The Court finds by clear and convincing evidence that the language in the deed conveying all of Larch Avenue to Alarie constituted a mutual mistake because it failed to reflect the intent or meaning of either the grantor or grantee. Either Alarie or Ciba-Geigy could have reformed the deed to correct the error while the other still owned the property. However, neither Alarie nor Ciba-Geigy ever attempted to reform the deed.
WP is a subsequent purchaser of Alarie's interest. If WP meets the requirements of a bona fide purchaser, then the Court will not grant reformation against Defendant. See Thompson on Real Property, § 82.12(e). "[E]equity will not reform a deed against a subsequent bona fide purchaser for value who [has] no notice of the mistake or of facts which should put them `on inquiry.'" The Dept. of Conservation v. Nevois, 600 N.E.2d 91, 93 (Ill. 1992); See also, United States v. LaRosa, 765 F.2d 693, 697 (7th Cir. 1985) (holding that once a mutual mistake has occurred, a court will permit reformation of a deed provided that the rights of a subsequent bona fide purchaser have not intervened).
WP, as the purchaser of real property had an obligation to "make a reasonable and diligent search of the records" related to the subject property. In re Barnacle, 623 A.2d 445, 451 (R.I. 1993). The purpose of such a search is to ascertain the contents of instruments recorded and to obtain notice as to the matters recorded. R.I.Gen.Laws § 34-13-2. A party who conducts such a title search is entitled to rely on the recording system. A recorded deed is operative against third parties. R.I.Gen.Laws § 34-11-4.
Plaintiff argues that WP had at least inquiry notice of the mistake in the deed from Ciba-Geigy to Alarie. The Court disagrees. The language in the recorded deed is clear and unambiguous. Whereas it may have placed Sholes on inquiry notice to examine the chain of title to property that abutted Larch Avenue, it did not place him on inquiry notice of an error in the Alarie deed. Sholes was not required to infer that Ciba-Geigy had merely transferred that portion of Larch Avenue that is described in Exhibit A to the deed. (Exhibit A describes Parcel I, in part as bounded "westerly on Larch Avenue one hundred and 75/100 (100.75) feet. . .").
The paragraph on the Alarie deed that conveys Larch Avenue is separate and distinct from the paragraph that references Exhibit A (describing Parcels I and II). Sholes was justified in considering the transfers separately.
Plaintiff argues that since Sholes could not determine the extent of Ciba-Geigy's interest in Larch Avenue without examining extrinsic evidence, he had no reasonable basis to conclude that Alarie owned the entire street. Plaintiff's argument fails for two reasons: First, it is well established that a title examiner may rely on other documents in the recording system to determine title to real estate. Rebelo v. Cardoso,161 A.2d 806, 811 (R.I. 1960); R.I.Gen.Laws § 34-11-4; and second, even if the description of Larch Avenue on the deed was subject to varying interpretations, Plaintiff cannot benefit from such ambiguity. A Deed which is subject to varying interpretations will be construed against the party drafting it. Deschane v. Greene, 495 A.2d 227,229 (R.I. 1985). Plaintiff's predecessor in title drafted the Alarie deed.
Plaintiff also contends that Defendant should have realized that Ciba-Geigy would not have conveyed such an irregularly shaped parcel to Alarie. Plaintiff suggests that Sholes would have been alerted to the mistake because the transfer of Larch Avenue to Alarie would have provided Alarie little advantage while creating a determinent to Ciba-Geigy and its remaining land. However, Sholes offered a credible reason why the owner of the Alarie parcel might have been interested in purchasing all of Larch Avenue and why it added value to the Alarie property. Because Plaintiff's property is zoned light industrial and commercial, Alarie, as the owner of abutting residential real estate, might want influence over future development. The owner of Larch Avenue could have a voice in the manner in which the surrounding property is developed.
Since the disputed property would have had value to Alarie, the Court cannot conclude that WP should have realized that Alarie would not have purchased it from Ciba-Geigy. The mere fact that the property conveyed to Alarie was irregularly shaped and that its transfer might interfere with the grantors interest in remaining land was insufficient to place WP on notice of a mistake in the deed.
Defendant, WP, fulfilled its obligation to search the land records. See, In re Barnacle, 623 A.2d at 451. The recorded land records failed to alert Defendant to an error in the Alarie deed. Failing to uncover an irregularity that would place it on notice of an error in the deed, Defendant consummated the transaction and purchased the Alarie Parcel. The Court finds that when WP purchased the property, it relied on the language contained in the 1993 deed transferring the disputed property to Alarie. WP was a bona fide purchaser for value of the Alarie Parcel. Coombs v. Aborn, 29 R.I. 40, 42 (1908). Since Defendant, WP, was a subsequent bona fide purchaser without knowledge of Ciba-Geigy and the Alaries' mutual mistake, the Court will not reform the deed.
 CONCLUSION
For the foregoing reasons, the Court denies Plaintiff's claim to quiet title. Defendant, WP is the title owner of all the right, title and interest that Ciba-Geigy had in Larch Avenue as of January 13, 1993, the date of the conveyance to Alarie.
Judgment for Defendant.